# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**TERRANCE LEE LANDERS**                                                                 **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO. 5:18-CV-P86-TBR**

**JEFF JOHNSON**                                                                          **DEFENDANT**

## MEMORANDUM OPINION

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff Terrance Lee Landers leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims but allow others to proceed.

## I. SUMMARY OF COMPLAINT

Plaintiff is incarcerated at the Fulton County Detention Center (FCDC). He brings this action against Jeff Johnson, the Chief Deputy at FCDC, in both his official and individual capacities.

In the complaint, Plaintiff writes as follows:

On June 26, 2017 approx 12:00 a few inmates covered the window of [their cell] with toothpaste and paper so officers could not see in. There was not a cell camera . . . The inmate's broke lights, unbolted a table, and flooded the cellblock with water. There was no way to identify who was responsible or involved. Two officers each wrote incident reports. They wrote up all 22 inmates me included from [the cell]. [Defendant] Johnson was called in hours later state police and local law enforcement gained entry to the cellblock and restrained myself and 5 other African American males. We were all put in isolation. I was isolated for a month and a half. [Defendant] Johnson then wrote his own incident report to the Department of Corrections and stated we were disruptive. [Defendant] Johnson recommended that 6 inmates loose classification and meritorious good time to prevent another occurrence. I was not responsible there was a prejudice decision to assume we were responsible. I feel violated. I have copies of the incident reports the two officers wrote. Involved all 22 inmates and I have a copy of [Defendant] Johnson report involving 6 African American males.

Plaintiff then continues his complaint as follows:

> It was also a security risk to have 22 inmates in a cellblock without a incell camera. If there was a camera he would know who was involved and wouldn't have made assumptions. Without proof, he demanded these six inmates to loose goodtime and classification just assuming we were responsible without proof and the Department of Corrections did take my classification and goodtime for a year. Also the report [Defendant] Johnson sent to the Department of Corrections has kept me from going home in home incarceration program and the mandatory reentry supervision program and stopped me from receiving work credit. The reports that were written by the two officers prove and shows that there was no idea who was involved. They were wrote by Ashley Collier and Jamie Alexander on June 26, 2017.

As relief, Plaintiff seeks compensatory and punitive damages and injunctive relief in the form of "restoration of good time" and "expungement of record."

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, the claim brought against Defendant Johnson in his official capacity is deemed a claim against his employer, Fulton County. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). With regard to the second prong, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the

liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that any violation of his constitutional rights occurred as the result of a policy or custom implemented or endorsed by Fulton County. Accordingly, the Court will dismiss Plaintiff's official-capacity claims against Defendant Johnson for failure to state a claim upon which relief may be granted.

B. **Individual-Capacity Claims**

1. **Fourteenth Amendment Due Process Claims**

Plaintiff seems to allege that his rights were violated when Defendant Johnson wrote a report that wrongfully charged him and five other African-American inmates for the incident that occurred at FCDC on June 26, 2017. Plaintiff alleges that, as result of this report, he was placed in segregation for "a month and a half" and lost his "[security] classification and goodtime for a year." Plaintiff seems to further claim that because he "lost" his security classification, he was no longer eligible for a home incarceration program, a mandatory reentry supervision program, or the opportunity to earn work credit.

A prisoner's ability to challenge a prison misconduct investigation and conviction depends on whether the actions implicated any liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." *Id.* at 487.

With regard to Plaintiff's claims based on his placement in disciplinary segregation, courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). The Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Harris v. Truesdell*, 79 F. App'x 756, 758 (6th Cir. 2003) (more than 60 days of punitive segregation does not implicate a liberty interest because it is not atypical or significant) *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (61 days in segregation is not atypical or significant). Thus, the Court finds that Plaintiff's placement in segregation for a month and a half is not sufficient to deprive him of protected liberty interest.

The Court next turns to Plaintiff's alleged loss of his security classification. The Supreme Court has indicated that no due process rights are implicated based upon a change in a specific security classification. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x at 759 (holding that prisoner had no constitutional right to be held in a specific security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 U.S. App. LEXIS 6647, at *3-4 (6th Cir. Mar. 22, 1993) (same). Thus, because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim in regard to such.

Federal courts have also consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, or educational programs based on the Fourteenth Amendment. *See, e.g.*, *Moody*, 429 U.S. at 88 n.9 (Due Process Clause not implicated by eligibility for rehabilitative programs); *Argue v. Hofmeyer*, 80 F. App'x 427, 429

6

(6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to study or work release program); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no liberty or property interest in prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("It is well established . . . that no prisoner has a constitutional right to a particular job or to any job."). Thus, the Court concludes that Plaintiff has no liberty interest in any of the programs that he alleges he lost the ability to participate in as a result of Defendant Johnson's charge against him.

Finally, the Court turns to Plaintiff's allegations that Defendant Johnson's actions resulted in him losing "goodtime for a year." Because the loss of earned good-time credits affects the length of an inmate's prison sentence, Plaintiff has a protected liberty interest in this regard. *Sandin*, 515 U.S. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Nonetheless, there is still a barrier to his § 1983 due process claim. In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .

*Id*. at 486-87. Thus, if a ruling on a claim would necessarily render a plaintiff's continued confinement invalid, the claim must be dismissed because it is not cognizable until the challenged confinement has been remedied by some other process. *Id*. at 489.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings, such as the one complained of by Plaintiff in this instance. The Supreme Court subsequently clarified that a prisoner must show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration

7

of his sentence has been affected. *See Muhammad v. Close*, 540 U.S. 749 (2004). To establish a "favorable termination," Plaintiff must first successfully challenge the validity of the conviction resulting in the loss of good-time credits by filing a habeas corpus action following the exhaustion of state-court remedies. If, and only if, Plaintiff's underlying conviction based upon Defendant Johnson's charge is invalidated may he then bring a civil action for the alleged harm caused by the acts which resulted in his disciplinary conviction and punishment.

### 2. Fourteenth Amendment Equal Protection Claim

The Court also construes Plaintiff's complaint as attempting to state an equal protection claim against Defendant Johnson for charging and disciplining Plaintiff for racially discriminatory reasons. The Court will allow this claim to proceed against Defendant Johnson in his individual capacity.

### C. Injunctive Relief

Finally, the Court notes that, as indicated above, in addition to damages, Plaintiff seeks injunctive relief in the form of restoration of his good-time credits. This type of relief, however, may not be sought in a § 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500, (1973) (the sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus).

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's official-capacity claims against Defendant Johnson, his individual-capacity claim against Defendant Johnson for violations of Plaintiff's Fourteenth Amendment procedural due process rights, and his claim for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will allow Plaintiff's Fourteenth Amendment equal protection claim to proceed against Defendant Johnson in his individual capacity at this time. In allowing this claim to proceed, the Court passes no judgment on the merits of the claim or ultimate outcome of this action.

The Court will enter an Order Directing Service and Scheduling Order to govern the claim it has allowed to proceed.

Date: June 28, 2018

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendant
    Fulton County Attorney
4413.011